Good morning. We will be hearing five cases this morning. We will likely take a break after two or after three. We're joined by Judge King, who is on Zoom, and she is fully participating. Um, and we'll have an opportunity to make sure she has questions. Judge King, can you hear us? Well, we can't hear you. Oh, no. I gotta get rid of the loop. Okay. I got rid of it. Good. Excellent. I can't see you because I'm too short, but I can see the top of your head. So but that's okay. Everyone else can see you. So our first case for today is 2021-10455, United States of America v. Islam Yassir Abdel Said. Mr. Page. May it please the Court. Kevin Joel Page for Mr. Said. Your Honors, if I gave you the text of the Federal Harboring Statute, I doubt that you could predict the outcome of individual cases, neither the ones already in the reporters nor the ones that are yet to arise. Conversely, I'm quite sure that if I gave you the outcomes of those cases, you couldn't draft a statute that reliably included all of the fact patterns that have produced affirmances and exclude those that have produced reversals. Though you might, upon hearing that pattern, begin to suspect that Congress had chosen a word like harboring that more communicates an attitude towards the defendant's actions than it identifies a concrete set of facts, which is another way of saying that the chaos in judicial opinions, both the outcomes and the wording, is attributable to the language that Congress chose, towards its ambivalence towards the area that it was Before I get to the chaotic judicial decisions, let me explain why I think the statute invites those chaotic, the chaos in the judicial decisions. First of all, Congress chose the word harboring, whose contemporary meaning is largely dislogistic. That is, it expresses an attitude, a negative attitude towards the conduct rather than defining the conduct. Mr. Page, you're free to talk about the chaos, but tell us what you seek as a result of the chaos. What is it that you wish to happen if you believe there's chaos? I wish for this court to say that the federal harboring statute, 1071, is, violates due process for somebody to be convicted under that statute because it is unconstitutionally vague. And therefore, counts one and two must be vacated and the case remanded for, to address the sentencing package. So the word harboring in 1071 largely expresses a tautology. Basically, it's saying that the defendant's conduct, sheltering, is illegal when it's illegal. And that fact essentially delegates the criminal lawmaking function to judges, prosecutors, and juries. Is this an as-applied challenge or is this a facial challenge? This is a facial challenge. And have we ever rejected that facial challenge before? Has this court ever undertaken a facial challenge? It does that every time. Right, have we ever rejected this argument that you're making such that we would be stuck with saying that it's not unconstitutionally vague even if we, this particular panel, were assuming arguendo to agree with you? No, I understand this to be an open question. It's an open question within our circuit and we've never, by making certain rulings in other cases, rejected this argument. Well, it's certainly affirmed harboring convictions, but it hasn't ever heard a void for vagueness challenge to this statute, which is common for void for vagueness statutes. In fact, that's the expected process, as we understand in Johnson, that we have a lengthy history, a rich history of judicial decisions that fail to establish a meaningful standard or a workable pattern before we realize that we simply can't do it. The question was not intended to criticize the timeliness of the constitutional challenge. It was meant only to ask if we were in any way bound. I'm not aware, I don't think so, no. Thank you. Thank you. Note that Congress could have chosen to write a statute that was something like the aiding and abetting statute, that would, something like aiding and abetting flight from prosecution, and we would have had fairly well-settled standards of aiding and abetting liability, knowledge of the criminal purpose and an intent to join it, and that would have captured all forms of knowing assistance, but Congress didn't do that. Instead, it created this new word, this new statute that's phrased in its own way, and it doesn't, it manifestly does not capture everything that a defendant may do that assists a fugitive. As Yarborough, a widely followed case, cited in this circuit says, not all facts that provide some form of assistance constitute a violation of the statute. The fact that it opened that kind of holding up reflects an ambivalence towards the process, towards the act of putting somebody in prison, because when a loved one comes to them and says, I've done something horrible and I need your help, that there's an ambivalence in Congress in not choosing aiding and abetting in providing some opening for dispensation of mercy in that situation. Now, the government notes that this Court's holdings, notes that this Court's holdings regarding the mens rea element and argues that the mens rea element, which is recognized in this Court's holdings, means that the defendant necessarily has adequate notice. The one problem with that is Davis, I think, forecloses the idea that a judicial construction, Maurice Davis, United States v. Maurice Davis, forecloses the idea that a judicial construction of the statute can afford somebody adequate notice if it isn't clear on its face. But even if we look at the judicial construction of the statute rather than its text, it isn't the kind of intent requirement that can ensure that the defendant necessarily has adequate notice. The harboring statute does not contain, for example, a willfulness requirement. So it doesn't, the government doesn't have to prove in order to get conviction that the defendant knew the conduct was illegal. It isn't even the typical construction of whoever knowingly verb, which would at least allow the Court to say, I'm not sure I know what harboring is, but the defendant can't be convicted unless they're knowingly doing it. Instead... Well, go ahead. Instead, go ahead. ...you intend to defeat apprehension and detection, according... Intended to prevent the fugitive's discovery, is how we've defined it in the United States v. Green case, an early case dealing with it. Indeed. Why is that not, it's, harboring means concealing a person's whereabouts from detection or discovery by law enforcement of some kind, and you must intend to conceal the whereabouts. Why is that not, what's wrong with that? What's wrong with that is that, I mean, there's nothing wrong with that intent standard, but the reason that it doesn't provide adequate notice of what is and isn't criminal is because the reporters are full of cases where defendants have been acquitted on appeal for insufficient evidence where they unquestionably had the intent to prevent discovery. The question, what the statute doesn't tell us, and that's, for instance, Foy, where the fugitive is on the ledge outside the apartment, like this, standing like this, and the police come and say, have you seen the fugitive? And the defendant says, no, I don't know where he is. And that person was acquitted on appeal for want of a physical act, for want of the act of harboring. There isn't any question that Ms. Foy wished to defeat the apprehension of the fugitive on her ledge, right? And the same with Shapiro. And Shapiro, which is a very widely cited, very widely followed case in this area, the defendant sent $250 a month to the defendant and then doctored the corporate books to cover up the payment. There isn't any question that person was trying to defeat the person's capture, but because for some reason this court and the courts in Shapiro and all over say that providing financial assistance is not a physical act, which doesn't come from the statute and is a bizarre proposition. Mr. Pager, I have no doubt you have more to say on this issue, but your brief says it as well. Let me ask you about the sentence and what O'Connor did or did not say. What would you say? It does seem to me that he explained in a page and a half or so of transcript of some of the negative aspects of your client's role here and the impact on law enforcement for several years. Is it what's missing in what he says or is there a problem in what he actually says? What are you focusing on insofar as his explanation? Insofar as the reasonableness claim number two goes, there isn't any question that the defendant was trying to defeat the person's capture. The problem is it is the absence of any evidence that he took into consideration the defendant's extremely limited intellectual capacities. What do we make of—this is a link that you would know better than I—but quite a few pages of transcript of the sentencing hearing and the arguments, which are contemporaneous with the sentence, which is immediately followed. Is there any break in time? Is there, after this, the arguments and evidence? And the issues about the IQ of your client and other mental questions had just been presented in front of him. It would be hard to me to say that he wasn't aware of those. What are you relying on in case law that says, if I feel confident that he was aware of them because he just heard about them, and he pronounces the sentence immediately thereafter, and even at some stage, who the lawyer was, who is pointing out some of the low IQ problems, the judge says, I'm aware of that, I know. So why can't we assume he took that into account? Well, there's three problems, I think, with that. The first one is that we have the first issue presented in the brief, which is that it is contested, it was contested by the government whether the defendant's IQ really was 62 in spite of a robust history of prior testing in that case. So we don't really know that he took that into consideration because we don't know whether he believed it. And there is procedural error, I submit, in the court shutting down the defendant's efforts to question the confidential informant about his relationships with law enforcement. So there is procedural, there's antecedent procedural error, which prevents us from knowing whether he fully considered the evidence of IQ. But just taking this as a substantive reasonableness. I'll stop you there. Whether he considered it or not, I think you may be going further than would be appropriate. But how he came out in that consideration, he doesn't say, whether he believed it, whether he believed he had a low IQ, whether he rejected the validity of that evidence or not. We don't know that. But he was aware of it. So I'm not sure if what you're saying fully takes into account that he was aware of the information that you're talking about. Does he need to say, why does he need to say how he comes out on his evaluation of that contested evidence? He needs to say that because this court needs to have an adequate record to evaluate the positive reasonableness of the sentence. In large part because of the significant variation from the guidelines. Yes, that certainly is a consideration, that it is a fourfold increase over the guidelines, which makes that sentence is not presumed reasonable, it's not presumed unreasonable, but it doesn't benefit from the presumption of reasonableness, which means that this court needs to engage, not in a heightened standard, but in serious scrutiny of the reasonableness of the sentence and needs to know whether or not, what facts the court was relying on, and how it balanced them. Well, Kander, I see merit in what you're arguing, but I also see merit in not sending things back to a district judge to say a few more words. A lot of discretion in the district judge on how to explain a sentence. Judge O'Connor certainly explained a lot about this sentence, but didn't cover what we're talking about in hindsight. Maybe he should have. What's your best case for saying we need to send this back, at least on that, regardless of your other issues? Well, the case that says, the cases, there are very old cases that say that the absence of a relevant factual finding merits a remand. There's United States v. Houghton. But there is also post-Booker case law, which acknowledges the basic distinction between substantive and procedural reasonableness. And so my submission to the court is that the sentence is substantively unreasonable, given the clear evidence of the defendant's mental disability in the case and the failure of that to play any role in the selection of the sentence. And there is, in Rita, the recognition that an explanation is necessary in order to create an adequate record for this court to perform its duty of evaluating the substantive reasonableness of the sentence. The one other point I wanted to make is that, independent of whether this court believed that the sentence is substantively supportable, I think it can reverse on the first, it ought to reverse, vacate the sentence on the first claim, which is that the defendant was not able to adduce evidence regarding the informant's relationship to the police in this case. That it is clear that the relevance objection that was sustained by the district court here does not have merit. It did tend to make a fact of consequence more likely. Thank you. I'm sorry. I forgot to ask Judge King if she had any questions. I assume, Judge King, did you have any questions for Mr. Page before he sits down? No, I will speak up if I have some. Okay, thank you, thank you. May it please the court, Ryan Niedermeyer for the United States. This court should affirm Mr. Saeed's sentence for two reasons. First, his sentence is reasonable. The district court properly analyzed the statutory sentencing factors and found that an upward variant sentence was necessary because the guidelines did not adequately consider the breadth of Saeed's conduct. The court cut off any, you know, cross-examination of like the double hearsay of, you know, it's actually the law enforcement's, the agent's opinion about whether the person was faking it based upon the statement made by the informant. So, I don't know that the informant actually said they're faking it, I mean, or that he could make, draw a conclusion. What the informant could have testified to would have been, I heard him say X or Y. And then someone, the court could have drawn a conclusion about being disabled. But for the agent to then give a conclusion about it and then not be able to cross-examine the agent about it or the informant about it seems to be problematic. Well, Your Honor, the district court didn't abuse its discretion at sentencing in limiting the cross-examination. Are you disagreeing that that was problematic? I, yes, Your Honor, I am disagreeing that it was problematic. Okay, well explain why it's not problematic to have an agent testify as to a conclusion about whether or not someone's faking it or not based upon some information they got from an informant and they're not able to even cross-examine the motives for that and also they're allowed to have the agent make the conclusion that they're faking. First, Your Honor, I read the agent's testimony as relaying the information that he received that was documented in a 302 that was provided to the court as information from the jailhouse informant as to how Mr. Saeed may or may not have been mentally incapacitated. And as far as the cross-limiting the cross-examination, at the time that the district court sustained that objection, the district court knew that the jailhouse informant was a convicted felon and that his sentencing had been twice delayed so that he could receive, he could possibly receive benefits from his cooperation with the government. And the rules of evidence, as this court well knows, do not apply at sentencing and the court, district court has... But it still has to be fair. I agree, Your Honor, but I think that this was fair. The district court was well within its power to take in the evidence that it wanted to hear and believe that it needed more of. And in this case, again, the district court, and we're talking about a seasoned district court here, we're not talking about a layperson jury, the district court understood why a jailhouse informant would cooperate with law enforcement officers against his bunkmate. And it was clear when he sustained the objection, this man was a convicted felon and that he was possibly going to receive a benefit at sentencing for cooperating with the government. And it was at that point that the district court properly understood the motives for the testimony, understood the motives for the informant's cooperation, and simply decided that it didn't need any more evidence on that. So I think the district court didn't abuse its discretion in limiting the cross-examination. But there's a lot of difference between some vague thing that you might get some benefit and a specific promises and things like that that were not allowed to be explored. Well, the area that was not allowed to be explored was simply whether or not that informant was cooperating in other cases. But I still think it goes back to that same point of the informant is expecting a benefit from cooperating, and that had already been explored through that line of questioning. But also it could go to whether the informant just always happens to be in the right place at the right time and just happened to hear this, really, if they're cooperating in a whole bunch of other cases, they just happen to be hearing a piece of a tidbit here and a tidbit there, and they just happen to be so lucky to be in that spot. That would question the veracity of the informant. And so those cooperation in other cases and what they heard in those cases and whether or not that's all relevant. It may be, Your Honor. It may be relevant. But again, the district court The district court specifically said it wasn't relevant. The objection itself, Your Honor, I'll concede was probably not on point. The relevancy objection was probably the improper objection. However, that doesn't mean that the district court doesn't have discretion and power to limit what evidence it wants to hear. And again, I think that this evidence would have just brought more information to the table that the district court had already heard, that this was a convicted felon who was probably receiving a benefit for his cooperation. And because the district court had that information already, it was within its power to ask the attorneys to move on. Let's go on to the next part of this sentencing. And so I don't believe there was procedural error here, Your Honor. But if this court were to find that there was, it's still subject to harmless error. It's still subject to a harmless error analysis. It's hard to find for you to prove harmless error when it's four times the amount of the normal sentence. That's really hard. I mean, to prove harmless error whenever the whole thing goes towards the whether the low IQ affected this and the district court didn't really even opine on that. Well, to that point, Your Honor, you have the burden on harmless error. Yes, Your Honor. To that point, the district court, this court has held that the district court is not required to go into a rote checklist recitation in whether the district court thought, well, he is really low IQ, but it doesn't matter. And we're not. I'm not going to be or I am being sympathetic to him, and I would have given him six times the regular sentence. We have no idea. We don't, Your Honor. But again, how do we review it with any? We can't review it if we don't understand what the district court did. I understand, Your Honor. And the district court, I believe, still gave a very adequate explanation for its upward variance sentence. It listed out all of the... Did you believe him or not? Did the district court think that he had low IQ, but nonetheless, and that might have affected his culpability, but nonetheless, the crime is so bad that the district court thought a high sentence should take place? Or did the district court not believe him and think he was faking it? What's the answer to that? On this record, I can't answer that question. You can't answer that, and that's crucial to our ability to review whether this was appropriate. I still believe that this court can adequately review whether this was an appropriate sentence. The court is not required to go through a checklist recitation of the sentencing factors. It simply has to explain adequately the reasons for its upward variance. And I understand, Judge Elrod, your concern about not explicitly making findings about the diminished IQ, but the court did adequately explain all the other reasons why Mr. Syed was required to be... Why a sentence, an upward variance sentence, was reasonable to Mr. Syed's conduct. The district court explicitly explained that the guidelines did not adequately consider Mr. Syed's threats against law enforcement officers, his racist attempt to blame Mexicans for his sister's murders, the extensive government resources used to apprehend his father both nationally and internationally, and the seriousness of his father's crime, which was the double murder of his two sisters, and then Mr. Syed's own possession of child pornography on his phone. None of these were... You certainly have a lot on that side of the scale, but just to pick up a little bit more on what you've been questioning about, it seems to me the issue of mitigation, the issue of what is in favor to some extent of Mr. Syed, was left unaddressed, and so we don't know what the findings were by Judge O'Connor. I'm trying to... Help me with this. I have no particular view I'm trying to get from you, but it seems to me that if the judge had addressed this, he could have said one of two things. One is, I don't believe that he is faking, but I don't believe a 60 IQ and whatever else will keep me from giving the sentence that I am now going to pronounce. Or he could have said the opposite, that I don't agree that he really has that low an IQ and I think he's been faking it. But either way, we would have a finding with a very clear holding by him, by the judge, that this is the proper sentence to be entered. So I guess I'm trying to figure out why, regardless of which way he would have stated his findings, how that would matter in our ultimate review of this sentence. How that would not matter, Your Honor? Why would it even matter? Whether you said he believed the evidence that he was faking or he didn't believe the evidence he was faking, he would have made that statement and he had some decision in his mind. He heard all the evidence. You would think he reached some sort of finding on it, but he just didn't tell us what it is. So how does that actually affect our ability to resolve whether this sentence should stand or not? It shouldn't, Your Honor. But help me with that. I knew that was your answer. The elaboration that I need from you. Why doesn't it matter? Yes, Your Honor. It doesn't matter because this court has repeatedly declined defendant's invitations to reweigh the sentencing factors. Well, but this is an exceptional sentence and in this sort of extraordinary variance, extraordinary may be the wrong word, but substantial variance, we have in past cases asked for a more thorough explanation of the reasoning by the judge. I'm just trying to figure out the absence of a statement of a finding on his mental ability, how that affects the application of that case law. I think just because the district court, again, didn't make an explicit finding, didn't mean that the district court didn't consider that evidence. There was plenty of evidence in front of the district court through sentencing memorandum, through sentencing argument, through a expert report and expert testimony. The district court considered that evidence and the ultimate finding, either one way or the other, was considered by the district court. And because  it's thoroughly explained upward variance sentence, I don't think that this court should accept the defendant's invitation to reweigh the sentencing factors. And to the point of the extent of the variance, McElwee was a 600% upward variance and this court found that the district court, because it adequately explained the reasons for the upward variance sentence, wasn't going to engage in a reweighing of the sentencing factors. So I do think, I think that's what's appropriate here, Your Honor, to follow this court's repeated declination of the invitation to reweigh the sentencing factors. And so because the district court gave adequate reasons for its upward variance and very detailed reasons for its upward variance, this court should do what it's done in the past with similar variances and find that the sentence is reasonable. Now, I'll touch on the for this court. Would you start with what is the state of the law specifically on, not generally on vagueness, but on this statute, on whether it is unconscionably vague, the word harboring? There has been no court that has held that. But what's the state of law? What holdings are there to the contrary? That the statute is vague, Your Honor? You said there's have held it vague. I'm saying how many have asked you what is the state of law and how many have held that it's not vague? Very few courts have analyzed the vagueness of Section 1071. There has been the Ninth Circuit in 2002, and I apologize it wasn't in my brief, and I'd be happy to, happy to supplement the record for the court if it would wish. The Ninth Circuit has reviewed the constitutionality of it as recently as 2002 and found that it was constitutional. And that was an as-applied challenge. Now, here, I don't think there is any problem with the vagueness on its face. You can each file a 28J on that Ninth Circuit case within five days. Thank you, Your Honor. You're saying it's in your brief, though? The case that I just referenced, it is not. He just mentioned a case not in his brief, but it was in response to a question. I'm not criticizing you, but I'm giving you each five days to do a 28J on that case. Thank you. No, I'm sorry to get in the way. No, you're not in the way at all. I thought he was just not remembering the case name, but it's not in your brief? No, it is not, Your Honor. Okay, thank you. I just want a clarification. Yes, sir. The courts, as the defendant has laid down in his briefs very adequately, since the 1940s have had no problem applying this statute. Since the 1940s have been very easily able to lodge to care for after secreting a deserter. That comes from the Shapiro case. That's the 1940 case in the Second Circuit. The courts have had no problem understanding what the term harbor means, and unlike the vague statutes in Morales and in Coates, Section 1071 has a mens rea requirement, and the Supreme Court has recognized that fair notice concern can be cured through a fair notice requirement. And the defendant, while he talks about arbitrary enforcement, has not explained how this statute would lead to arbitrary enforcement. I think he's saying that the people in Foy and the other one with the money. Shapiro. Thank you. That they are getting off, and so it's unfair that there's no due process. Do you want to address that, please? Sure, Your Honor. The courts, again, in Shapiro and Foy, and courts since have been clear that harbors an active verb is how they have described it. And simply sending money to someone or simply lying aren't active verbs is what those courts, and in Foy in particular. That person on the ledge, I just don't understand why that person's not within their, they can't say get off my ledge. I mean, so why aren't they harboring? So in Foy, the real issue in Foy was that Foy was in an apartment with a co-defendant, and the fugitive was in that apartment. But law enforcement had no evidence that they told the fugitive to go out on the ledge or to do anything or that they invited him in the apartment. All they had was evidence that Foy may have lied about seeing the song. So I think Foy is easily distinguishable, Your Honor. But, and that's... Why is it, letting someone be in your place, whether it's in the curtilage or the ledge or whatever, why isn't that alone? I guess maybe I'm quibbling too much with Foy, but I don't understand why they would have to say, we let him come in. The fact that he's there and you're not saying get out is enough. Why isn't that enough? Again, Your Honor, in Foy, that evidence was missing altogether. But the fact that they're there. There's no evidence of how the fugitive got into the apartment, Your Honor, and Foy talked about that. Well, even if they got in through breaking in, the fact that they're not doing anything to get them out when the law enforcement are right there, that seems to be, I'm sorry, but that's, I guess, I'm quibbling too much with Foy. No, I understand, Your Honor, and I understand that. But again, I would go back to, in Foy, again, the Foy's co-defendant in the fugitive did not give any information against Foy to be able to implicate his knowledge of the fugitive being in the house. Again, it would, we could... He didn't know he was on the ledge. Right. He didn't know he was on the ledge at all. Right. That was what happened in Foy. It's very different than this case. Exactly. And importantly, in this case, this court should apply an as-applied challenge, despite Saeed's assertion otherwise. And as applied, an ordinary person would understand Saeed's conduct as violating Section 1071. He admitted... Is it because he was in the house, in the place, or is it because he brought him food? Because he's bringing him food and that bringing food, this court has made clear, or I'm sorry, courts have made clear that actively providing food and shelter is different than passively sending money for the fugitive to provide that himself. Here, Saeed harbored, his father admitted to harboring his father in his own apartment when police came looking for him. And before that, and then after his dad escaped that day and Saeed fled to Canada and came back, he continued to harbor his father at a second location. And there's nothing in this record about... And they have excellent counsel in the government, I mean, the federal public defender, that like he was forced by his father and he knows his father could be violent and that sort of thing. I believe there were implications through Dr. Elliott's findings that he may have been influenced, and I believe the defense mentioned that. That's not for us here today. Not at all, Your Honor. What is for this court is to see that he continued to harbor his father after he almost got caught once. He then harbors his father at a second location. He brings him food. He removes incriminating trash that he knows that federal agents can use to track his father at that location. He dumps it miles away. And then he also helps his uncle build a room in the house so that they can continue to conceal Yasser Saeed. And because of that, an ordinary person would look at Saeed's conduct and know that this was a 1071 violation. Because of that, his constitutional argument fails. In sum, Your Honor, this court should uphold both Saeed's conviction and sentence. His sentence is reasonable because the district court gave plenty of adequate reasons why it upwardly varied. It didn't commit any procedural error in using its discretion to limit the defense cross-examination. And Section 1071 is not vague on its face and certainly is not vague as applied to Saeed.  May it please the court. Here are the reasons I don't think that we can say that the district court's decision not to permit the defendant to adequately determine the reliability of the substantive reasonableness of the sentence. Even if the sentence is supportable, even if the defendant were mentally disabled, there's still an obligation that the sentence be determined in a procedurally fair manner. Burns v. United States says the guidelines in Rule 32 contemplate a focused adversarial testing of the relevant facts and legal issues in the case. So even if the court could have said, 10 years is my sentence, even believing that the defendant is intellectually disabled, there is still a right for the defendant to determine whether or not the informant is credible. Number two, this was a central, hotly contested issue at sentencing, and we have no information about how the district court actually resolved that issue. That's important both for the substantive reasonableness of the sentence, this court's review of the substantive reasonableness of the sentence, and it is at least necessary to permit the defendant to test, to present facts as to the relevant issues when the sentence is so far above the general assumption.  so when you think about formalized sentencing that's not going to make a difference, as the old statute asserted, it's going to make a real difference. Finally, we have excellent the answers to many of these questions. Don't even know the criminal history of Mathis, don't know what else he was facing, Mathis being the the informant. How many times did the FBI talk? Twice. How many times other federal agents? I don't know. And then where it was cut off is is he cooperating against other people? I mean, I can see what Judge O'Connor's saying. Okay, I get it. It's up to him and his discretion. I get it. He's cooperating. I don't know. This witness doesn't seem to know a lot about the details of some of these others. Maybe O'Connor was right or wrong on that. We pursued this long enough. I have in front of me that he's cooperating and the benefits that I know cooperating witnesses get are on the table. Why is that error at all, or at least harmless if it is? You're just trying to add more to your scale of more cooperation than you have yet exposed. But it's just numbers, isn't it? It isn't. Here are the facts that Judge O'Connor could not evaluate because he didn't know them because he intervened at that point. He couldn't evaluate whether or not this informant had been right or wrong in the other cases where he was cooperating, whether those facts had contradicted what he told the police or not, because he didn't know whether it had ever happened before. He couldn't, as Judge Elrod pointed out, evaluate whether or not this informant always seems to be where the information is. And he couldn't evaluate whether the agent had an incentive to protect the reputation of this informant because of this repeated cooperation. Well, if that was the direction this questioning was going, that's an awful lot for Judge O'Connor to imply. The only question he's stopped so far is, is he cooperating against people other than Saeed? And relevance was the objection. The objection was sustained. Whether it's sustained on the basis of relevance or not, maybe you could apply, maybe you can't. But it does seem to me that what you're talking about is actually where this was headed. The defense counsel should have said that. Well, Your Honor, it's not just the numbers. We want to do the things that you just set out. Isn't there some obligation there before putting the judge in error to show where you're headed? I think if you'll look right at that transcript on 1036, he immediately says, I, in an effort to explain why he needs to do that. And O'Connor... It's the witness. The court sustained. So the witness is about to answer anyway. I don't, you know, court report has to type it up. It's probably talking on top of each other, and it doesn't come out that way on the transcript. Ask your next question. He didn't say next question on a totally different subject. He says, ask your next question. Well, he said move on in that case. I think that the implication from that transcript is... Looking at it right here, but nonetheless, maybe that was the implication. I would also say 103 doesn't apply here. I think that you can determine the thrust of the questioning from the questions themselves. But independent of this, 103 doesn't apply here. If a judge tells you he doesn't want to hear it, how do you make a record against that? You can't excuse the jury. There isn't a jury. Thank you very much.